IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **KEVIN MACKIE,** * | |
| * | |
| **Plaintiff,** * | |
| * | **Civil No. TMD 14-2599** |
| v. * | |
| * | |
| * | |
| **CAROLYN W. COLVIN,** * | |
| **Acting Commissioner of Social Security,** * | |
| * | |
| **Defendant.** * | |
| ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kevin Mackie seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 17).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## **Background**

Plaintiff was born in 1959, has a seventh-grade education, and has no past relevant work. R. at 18, 157.  On October 24, 2011, Plaintiff filed an application for SSI, alleging disability beginning on September 30, 2004, due to hernia, head tumor, asthma, and seizures.  R. at 126-34, 157.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 56-73, 76-79, 82-87.  On February 27, 2013, ALJ C.J. Sturek held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 25-55.  At the hearing, Plaintiff amended his alleged onset date of disability to January 26, 2012.  R. at 28, 151-52.  On April 1, 2003, the ALJ issued a decision finding Plaintiff not disabled since the application date of October 24, 2011.  R. at 8-24.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 26, 2014.  R. at 1-6.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On August 15, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.   **Eugene Taylor, M.D.**

The ALJ noted in his decision:

> A Medical Report Form was completed by Eugene C. Taylor, M.D. on October 1, 2009 in which he diagnosed asthma, COPD, osteoarthritis, seizure disorder, and [alcohol] abuse. Dr. Taylor indicated that during an 8-hour day, [Plaintiff] had no restrictions with sitting and standing, but could only walk for 1 hour. He also indicated that [Plaintiff] could never climb, bend, squat, reach, or crawl, but had no problems with simple grasping, pushing, or fine manipulation. He further indicated that [Plaintiff] could lift/carry 10 pounds frequently. In addition, Dr. Taylor stated that substance abuse was present; however, he did not know if [Plaintiff's] condition would exist in the absence of substance abuse. Dr. Taylor opined that [Plaintiff's] medical condition prevented him from working from October 1, 2009 to October 1, 2010 [R. at 370-75].

R. at 16-17.

B.   **State Agency Medical Consultants**

On February 27, 2012, a state agency medical consultant, M. Ahn, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 60-61. Dr. Ahn opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 60. Because of his history of seizures, Plaintiff occasionally could balance and could stoop, kneel, crouch, crawl, and climb ramps and stairs without limitation (but never climb ladders, ropes, or scaffolds). R. at 60-61. Although he had no manipulative, visual, or communicative limitations, Plaintiff was to avoid all exposure to hazards such as machinery and heights. R. at 61. On May 31, 2012, another state agency consultant, W. Hakkarinen, M.D., expressed the same opinion about Plaintiff's physical RFC. R. at 69-71.

C.  **Hearing Testimony**

1.  **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] testified at the hearing that he is 33 years old and went to the 9th grade in school; however, in his Disability Report-Adult [R. at 156-61], he indicated that he has completed the 7th grade. He never went to a trade or vocational school. [Plaintiff] stated that he had reading problems in school, and was put into Special Classes to help with his reading and writing. He testified that he cannot read or write, but that he could add and subtract, and is good with numbers. He also indicated that he could make change from a dollar and can tell time. [Plaintiff] testified that he last worked at a church for about 4 hours a day, performing activities such as cleaning, vacuuming, and dusting. He reported that he used to do the job every other week; however, he stated that he is not doing it anymore, although he was asked to come and clean the day after the hearing. He testified that he receives $20.00 for each job that he does.
>
> At the hearing, [Plaintiff] also testified that he has never been married and that he has no children under age 18. He stated that he lives with a lady friend who is 83 years old, and who he refers to as his stepmother. He reported that he lives on the 4th floor of an apartment which has an elevator. [Plaintiff] testified that he has no driver's license, and has never had one, but indicated that he uses public transportation, and has no problems using it. He testified that his lady friend's daughter brought him to the hearing, and that he had no problems riding in the car.
>
> [Plaintiff] testified that he sometimes has problems breathing when he is cleaning; however, he also stated that he smokes several cigarettes a day, although he used to smoke a pack a day. [Plaintiff] testified that he drinks sometimes to be sociable. He stated that he drinks a 6-pack of beer at one time, but does not become intoxicated.
>
> [Plaintiff] reported that he gets no Food Stamps, no Cash Assistance, and no Medicaid, but that he does visit a Clinic whenever it is necessary, and pays $25.00 for each visit. He testified that he pays no rent and does not pay for any food. He stated that he buys his own food with Food Stamps; however, earlier he testified that he receives no Food Stamps. [Plaintiff] testified that he travels by bus to shop for food, and that he can walk ½ block. He stated that he has no problems stooping, sitting, raising his arms over his head, and opening or closing doors.
>
> [Plaintiff] testified that he takes medication for his asthma, and that it does help. He also testified that he uses steroids every day, which also help. [Plaintiff] complained that sometimes he has problems with his left knee and ankle, but

stated that he receives no treatment for either one. He also testified that he takes medication for his high blood pressure, which is under control. [Plaintiff] reported that he has had seizures, but does not take medication to prevent the seizures. He also reported that he has trouble sleeping at night, but does not take any medication to help him sleep. [Plaintiff] testified that he gets only 4 hours of sleep at night, but that he also sleeps about 2 hours during the day.

[Plaintiff] testified that he spends a typical day watching TV, and that he has no problems paying attention. He also stated that he has no memory problems. In addition, he indicated that he does some household chores, including some cooking, cleaning, laundry, and shopping for groceries. [Plaintiff] stated that he does not attend any AA meetings, but does go to church about once a month, and sits through a 4-hour service without any problems.

R. at 15-16; *see* R. at 29-51.

### 2. VE Testimony

The VE testified that a hypothetical person with Plaintiff's same age, education, work experience, and the RFC outlined below in Part III could perform the medium, unskilled jobs of packer and hospital cleaner and the light, unskilled jobs of router and counter clerk.[2] R. at 51-53. No work would be available to someone whose productivity would be reduced to 85% or less. R. at 54. If an individual's asthma or sleeping difficulties affected his ability to stay on task, causing a 15% to 18% loss of productivity, then he would not be able to maintain employment. R. at 54.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 416.967(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 416.968(a).

III

**Summary of ALJ's Decision**

On April 1, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of October 24, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) did not have any past relevant work; but (5) could perform work in the national economy, such as a packer, hospital cleaner, router, or counter clerk. R. at 13-19. The ALJ thus found that he was not disabled since the application date of October 24, 2011. R. at 20.

In finding that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04 and 12.09 found in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04 and 12.09, the ALJ found that, "[w]ith regard to concentration, persistence, or pace, [Plaintiff] has moderate difficulties." R. at 14. The ALJ then found that Plaintiff had the RFC

> to perform medium, light, and sedentary work, or work that requires a maximum lifting of 25 pounds frequently and 50 pounds occasionally; walking and standing for 6 hours in an 8-hour day with normal breaks; and sitting for 6 hours in an 8-hour day with normal breaks. [Plaintiff] can occasionally balance, but he can never climb ladders, ropes, or scaffolds. [Plaintiff] must avoid concentrated exposure to hazards such as moving machinery and unprotected heights, and he must avoid all driving, since he has no license. [Plaintiff] is limited in the ability to keep up a pace due to fatigue and shortness of breath, but is able to remain productive more than 85% of an eight-hour day.

R. at 14-15.[3]

Regarding Plaintiff's credibility, the ALJ found that his medically determinable "impairments could reasonably be expected to cause the alleged symptoms; however, [his]

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible, for the reasons explained in this decision." R. at 17. The ALJ noted

> the generally conservative nature of treatment, and the lack of objective findings that would support the severity of [Plaintiff's] allegations. The undersigned also notes [Plaintiff's] comments when he testified that he gets no Food Stamps, and does not pay for any food, but then he immediately testified that he buys his own food with Food Stamps.

R. at 17-18.

The ALJ gave "significant" weight to the opinions of the state agency medical consultants "because they are deemed experts and highly knowledgeable in the area of disability, and because their opinions are largely consistent with the evidence of record as a whole." R. at 18. The ALJ afforded "little" weight to Dr. Taylor's opinion because "Dr. Taylor did not define [Plaintiff's] functional limitations with any degree of specificity." R. at 18.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 16-1.  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work.  *Id.* at 5.  In particular, he contends that the ALJ failed to include any limitations on his concentration, persistence, or pace in the ALJ's RFC assessment.  *Id.* at 5-6.  Plaintiff also argues that the ALJ provided no explanation to support the inclusion in the RFC assessment of a limited ability to keep up a pace but remain able to be productive more than 85% of the time.  *Id.* at 6.  Plaintiff finally asserts that the ALJ "failed to address the impact of [his] deficits in concentration, persistence, or pace upon his [RFC], and upon his ability to remain productive throughout an eight-hour work day."  *Id.*  Plaintiff thus contends that substantial evidence does not support the ALJ's RFC assessment, which "defies review." *Id.* at 6-7.

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). Furthermore, "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.*

Thus, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is

necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015). Plaintiff maintains that, although the ALJ determined that he had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on his concentration, persistence, or pace in the ALJ's RFC assessment, instead determining that Plaintiff could still remain productive more than 85% of the time despite his limited ability to maintain a pace because of fatigue and shortness of breath (R. at 15, 52-53). Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF No. 16-1. According to Plaintiff, remand under *Mascio* thus is warranted in this case.

Plaintiff's argument is unavailing. The ALJ found that Plaintiff's difficulties in maintaining concentration, persistence, or pace were moderate. R. at 14. The ALJ then found that Plaintiff was "limited in the ability to keep up a pace due to fatigue and shortness of breath" but that he was "able to remain productive more than 85% of an eight-hour day." R. at 15. The ALJ's hypothetical questions to the VE also included a capacity to be productive more than 85% of the time, despite fatigue and shortness of breath affecting the ability to maintain pace. R. at 52-53. Thus, the ALJ in his RFC assessment and hypothetical questions to the VE accounted for Plaintiff's fatigue that limited his ability to maintain pace. Remand under *Mascio* is not warranted here because the ALJ explained his reason for finding a moderate limitation in maintaining pace and included a corresponding limitation in the RFC assessment. *See Helms v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3687, 2016 WL 228892, at *3 (D. Md. Jan. 19, 2016) ("The ALJ specifically acknowledged, in the RFC assessment, that [the claimant's] pain would cause occasional limitations in her ability to maintain attendance and complete a normal workday. However, the ALJ was clear in his questioning of the VE that by "occasional," he still found that [the claimant] could persist more than 80% of the time. Because the ALJ explained

the reason for his finding of a moderate limitation and imposed a corresponding restriction in the RFC assessment, there is no *Mascio* violation." (citations omitted)).

Moreover, Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). Despite Plaintiff's contention that the ALJ failed to explain his finding that Plaintiff was able to remain productive more than 85% of the time, Plaintiff points to no evidence that his impairments would reduce his productivity by 15%, *see Jeffress v. Astrue*, No. 3:11-CV-806-HEH, 2012 WL 3866536, at *15 (E.D. Va. Aug. 21, 2012), *report and recommendation adopted*, No. 3:11CV806-HEH, 2012 WL 3851222 (E.D. Va. Sept. 5, 2012), and "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *see Stitely v. Colvin*, 621 F. App'x 148, 150 (4th Cir. 2015) (per curiam) ("[The claimant] points to no 'overlooked' evidence, aside from his own allegations, which the court found not entirely credible, that would substantially aid his case."). The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms not entirely credible because of the conservative nature of his treatment and the lack of objective findings that would support the severity of his allegations (R. at 17-18). *See Stitely*, 621 F. App'x at 150-51; *Dunn v. Colvin*, 607 F. App'x 264, 271-75 (4th Cir. 2015); *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984). Plaintiff's contention in this regard thus is without merit.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: February 22, 2016                                           /s/
                                                                  Thomas M. DiGirolamo
                                                                  United States Magistrate Judge